[No. 26692.   Department One.   July 12, 1937.]

FLORENCE LEWIS, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

*Harold P. Troy, Julia Waldrip Ker,* and *Phil K. Eaton,* for appellant.

*The Attorney General* and *J. A. Kavaney, Assistant,* for respondent.

GERAGHTY, J.—William Lewis was accidentally killed August 24, 1935, while engaged in extrahazardous em-

[1]Reported in 70 P. (2d) 298.

ployment, as defined in the workmen's compensation act.

Florence Lewis, claiming to be his widow, filed her application with the department of labor and industries for compensation for his death. The supervisor rejected her claim on the ground that she was not the widow of William Lewis. The claimant's petition for a rehearing before the joint board was granted, and, at the rehearing subsequently had, evidence was introduced tending to establish the following facts material to the issue involved:

The claimant entered into a ceremonial marriage with William Lewis before a minister, in the city of Olympia, on April 15, 1931; and, from that time until his death, the decedent and claimant lived together as husband and wife and were so known and recognized in the community in which they lived in Thurston county.

By stipulation of the parties, copies of the findings of fact, interlocutory order, and final decree in a divorce proceeding, instituted by Nellie Lewis, as plaintiff, against W. A. Lewis, as defendant, in Pierce county, in January, 1931, were introduced in evidence before the joint board; and it is conceded that W. A. Lewis, named in the divorce action, was the William Lewis out of whose death the present controversy arises. The interlocutory order was entered February 17, 1931; the final decree, September 10, 1931. As we have seen, the marriage ceremony was performed April 15th, a little less than two months after the entry of the interlocutory order.

The claimant testified that she married William Lewis in good faith and without knowledge that he was a married man at the time the ceremony was performed. However, it appears that she had been acquainted with him for at least a year before the wed-

ding. She admitted that she knew he was a married man at the time they became acquainted, but stated that he had made several trips to Tacoma for the purpose, as he told her, of procuring a divorce; and that she thought the divorce had been obtained. Quoting her testimony:

"Q. And what give you any reason to think that he was divorced from his former wife? A. Well, I had heard him say that. He used to go to Tacoma some and when he would come back I heard him say, 'Well, I am free now,' and that he was glad of it, and those things like that. That is all I know of it. Q. In other words, you developed your understanding from what he told you? A. Yes, sir, what he said. Q. Did he ever exhibit to you his papers on the divorce from his former wife? A. No, I never saw anything. Q. Did he ever tell you when he was divorced from his former wife? A. No. Q. Did he ever tell you what year he was divorced from his former wife? A. No, he never."

Nellie Lewis, plaintiff in the divorce proceeding, testified to her marriage to William Lewis and to their subsequent divorce. Examined with reference to an earlier marriage, she testified that, more than forty years before, she had married a man by the name of David Cox in Spokane; that subsequently they removed to Canada and thereafter separated, but were never divorced; that many years after separating from Cox, and after she had returned to the United States, she made inquiry to ascertain whether her husband was still living, and was informed by the postmaster, to whom she addressed her inquiry, that he had died in British Columbia. She married William Lewis in Portland, Oregon, in 1927.

After the joint board had affirmed the ruling of the supervisor, the claimant appealed to the superior court. The case was there heard on the departmental record, including the evidence taken by the joint board.

The court found as facts that William Lewis died as the result of an injury sustained in extrahazardous employment; that prior thereto he had gone through a marriage ceremony with the claimant, Florence Lewis, but that, at the time of the performance of the ceremony, he was married to another woman, from whom he had not been divorced; and that the department had not been arbitrary or capricious in disposing of the claimant's application for compensation.

A judgment was accordingly entered affirming the decision of the department; the claimant appeals.

█ Claimant's first contention is that, while she knew that the deceased had been previously married, her own marriage to him was in good faith on her part and in the belief that no impediment to a valid marriage existed at the time; and she cites cases from California and some other jurisdictions holding that a woman who, in good faith, lived with an employee, in the belief that she had been lawfully married to him, was entitled, as a dependent, to compensation for his death. These cases, however, turn upon the definition of the term "dependent" contained in the effective statutes.

The California workmen's compensation act of 1917, § 14, p. 844, provided:

"(a) The following shall be conclusively presumed to be wholly dependent for support upon a deceased employee:

"(1) A wife upon a husband with whom she was living at the time of his death, or for whose support such husband was legally liable at the time of his death. . . .

"(b) In all other cases, questions of entire or partial dependency and questions as to who constitute dependents and the extent of their dependency shall be determined in accordance with the fact, as the fact may be at the time of the injury of the employee."

In *Temescal Rock Co. v. Industrial Acc. Commission*, 180 Cal. 637, 182 Pac. 447, 13 A. L. R. 683, it was held by the supreme court of California that where a woman, in good faith, lived with an employee as his lawful wife, believing that their marriage license in itself constituted marriage, she had no standing as his widow, but was entitled to recover for his death as a dependent "member of his household" under the above quoted subd. (b), saying:

"Dolores Rodriguez does not come within the provisions of subdivision 1 of subsection a. That part of the subsection includes only those who stand in the relation of husband and wife. Its language necessarily implies that the relation must be lawful, and therefore it excludes persons who, though not lawfully married, live together believing themselves to be husband and wife.

"Subsection b, however, clearly empowers the commission to inquire into the actual conditions of dependency and to ascertain whether or not the applicant was in fact dependent upon the decedent for support at the time of the injury, and, finding such dependency, complete or partial, thereupon to award compensation accordingly."

It will be noted that the California statute lodges a large measure of discretion in the industrial accident commission in the determination of who are dependents. No comparable provision, in respect of dependency, is found in our statute.

Dependency is defined in § 7675 [P. C. § 3470] of our act as follows:

"Dependent means any of the following named relatives of a workman whose death results from any injury and who leave surviving no widow, widower, or child under the age of sixteen years, viz: Invalid child over the age of eighteen years, daughter between sixteen and eighteen years of age, father, mother, grandfather, grandmother, stepfather, stepmother, grandson, granddaughter, brother, sister, half-sister,

half-brother, niece, nephew, who at the time of the accident are actually and necessarily dependent in whole or in part for their support upon the earnings of the workman. . . ."

In *Meton v. Industrial Ins. Department,* 104 Wash. 652, 177 Pac. 696, the claimant's status was very much like that in the California case quoted, in that she had lived with the deceased workman in the honest belief that they were legally married, although they had only some papers showing an incompleted application for a license. Quoting this definition, the court said that, plainly, the claimant's relation to the employee did not bring her within any of the classes of persons so defined as dependents.

■■ Not being a dependent of the deceased within the statutory definition, the claimant's right to compensation is to be resolved by the answer to the question: Is she his widow?

In *Meton v. Industrial Ins. Department, supra,* it is said:

"There is no definition of the word 'widow' to be found in the act, though there is of the word 'dependent,' apart from the word widow. It is therefore plain that the word widow, as used in the act, must be given its ordinary meaning, which is, 'A married woman whose husband is dead.' 3 Bouvier's Law Dictionary (Rawle's 3rd Rev.), 3454."

That William Lewis was legally incapacitated to marry the claimant at the time the ceremony was performed, cannot be questioned.

"No final decree of divorce having been entered, the marital relation had not been severed. *State ex rel. Hamlin v. Superior Court,* 148 Wash. 113, 268 Pac. 159, *Reed v. Reed,* 149 Wash. 352, 270 Pac. 1028, *In re Boeson's Estate,* 201 Cal. 36, 255 Pac. 800." *In re Chisholm's Estate,* 159 Wash. 674, 294 Pac. 973, 76 A. L. R. 279.

It is true, as urged by claimant, that, where a marriage is solemnized with the formalities prescribed by law and the parties have thereafter lived together as husband and wife, there is the strongest possible presumption in favor of the validity of the marriage, and that the burden of proving the validity of the first of two conflicting marriages is upon the party asserting it. *Donofrio v. Donofrio,* 167 Wash. 80, 8 P. (2d) 966. But we think this presumption is rebutted here by the evidence found in the record.

Not only was the record of the divorce proceeding between William and Nellie Lewis introduced, but Nellie Lewis appeared in person and testified before the joint board to the marriage.

Claimant argues that there might have been another divorce; but, if there was such, the burden of proving it shifted to the claimant.

The claimant questions the legality of the marriage of Nellie to William Lewis, based upon Nellie's testimony that she had not been divorced from her first husband, Cox, whom she married in early life. While indefinite in her testimony, she did state that she had married Cox in early life, had separated from him, and, years thereafter, was told, in response to an inquiry, that he was dead. Apart from this, the presumption of regularity which the claimant invokes to sustain her own marriage applies, if in a lesser degree, to support the marriage of Nellie with the deceased as against the earlier marriage with Cox.

The fact that the claimant and the deceased continued to live together as husband and wife after the entry of the final decree, when a valid marriage could have been solemnized, does not legalize the ceremonial marriage had in violation of the statute. *In re Smith's Estate,* 4 Wash. 702, 30 Pac. 1059, 17 L. R. A. 573.

We see no escape from the conclusion that, whatever

may have been claimant's good faith in her relations with the deceased, she can be classed neither as his widow nor as his dependent as defined in the compensation act.

The judgment is affirmed.

MILLARD, MAIN, BLAKE, and ROBINSON, JJ., concur.