482 P.2d 86

In the Matter of the ESTATE of Vernon BROCK, deceased.

Dorothy NINES, Plaintiff, Contestant and Appellant,

v.

Verna BROCK and First Security Bank of Idaho, N.A., Defendants, Proponents and Respondents.

No. 10718.

Supreme Court of Idaho.

March 4, 1971.

Leslie T. McCarthy, Lewiston, for appellant.

Henry Felton, Lewiston, for respondents.

McFADDEN, Justice.

Dorothy Nines, the appellant, has appealed from an order of the district court which, on appeal from an order of the probate court, affirmed the appointment of the First Security Bank of Idaho, N.A. (herein referred to as the Bank), as the administrator of the estate of Vernon Brock, deceased. Verna Brock, respondent, petitioned the probate court of Nez Perce County to be appointed the administratrix of the estate of Vernon Brock, deceased. In her petition, Verna Brock alleged that she was the widow of Mr. Brock who died on September 2, 1969. Later she amended her petition, nominating the Bank to serve as administrator and requesting its appointment.

Dorothy Nines, a sister of the decedent, contested the appointment of the Bank, and petitioned for her appointment as administratrix of her deceased brother's estate. In her petition and objections to Verna Brock's petition, she alleges that Verna Brock was not married to her brother, that Verna's correct name is Verna Harris, and that as the sister of the decedent, Mrs. Nines was his next of kin and entitled to the appointment. I.C. § 15–312.

The pleadings of the parties thus put in issue the question whether the decedent and Verna Brock were married. The probate court, as well as the district court, held that they were married and Verna Brock as the widow of decedent was entitled to nominate the Bank as administrator.

By her appeal, Mrs. Nines challenges the correctness of the factual determination by the district court that the parties were married, and also assigns error to the admission in evidence of a series of documents.

At the hearing before the district court it was established that Verna Brock had lived with Vernon Brock for over twenty years. Verna Brock testified that she had lived in the house for twenty years, that she did the cooking and housework and

that Mr. Brock had introduced her as his wife "every time somebody come" to the home. She also testified that as his wife she had signed income tax returns with decedent over the years. Verna Brock's sister, Rose Grasser, testified that she was with Verna when Verna registered as Mrs. Brock in a hospital in 1966 for an operation. Mrs. Grasser testified that her husband and Mr. Brock were together quite often, fishing and hunting, and that she knew Vernon Brock and her sister lived together "better than twenty years" as man and wife.

George Grasser testified that Vernon Brock had been his steady hunting partner for "better than twenty years" and that he and his wife exchanged visits with Vernon and Verna in each other's homes and that Vernon had spoken of Verna as his wife on several occasions.

Mrs. Krembly, a cousin of Mr. Grasser, testified that she had visited in the Brock home several times, and that Mr. Brock had introduced Verna to her as his wife.

Perry Strickland, a brother of Verna, also testified that Vernon and Verna had lived together for about twenty years and that he had heard Vernon refer to Verna as his wife, and that Vernon had introduced Verna to Mrs. Krembly as his wife.

Appellant testified that although the decedent was her brother, at no time did he ever refer to Verna as his wife. Her husband testified that Vernon only referred to her as "Verna."

Floyd Frost, a former brother-in-law of decedent, stated that Vernon only used the name of Verna, and that Vernon stated to Frost, " 'Well,' he said, 'I will tell you one thing, I will never marry another one.' " Dale Frost, another witness, the nephew of Floyd Frost, testified that he used to fish and hunt with decedent, but that Vernon never introduced Verna as his wife, and that in conversing with the witness, the decedent never referred to Verna as the witness's aunt. Another witness, a busi-

ness acquaintance of the decedent for many years, testified he never heard the decedent refer to Verna.

In addition to the testimony of the various witnesses, there were a number of exhibits admitted in evidence, to which appellant has assigned error, claiming that they were improperly admitted. These exhibits, eleven in number (exhibits A through H, H-1,[1] I and J), reflected that Vernon and Verna were husband and wife. A number of these had been found in decedent's effects following his death.

Two exhibits were admitted in evidence without objection, one being exhibit F, an order sent to a mail order house in the name of Verna Brock, which reflects her "spouse's name" as Vernon Brock. The order shows that the money was received and the order returned to the Brocks. Testimony disclosed this had been written by Vernon Brock, as his wife did not read or write. Exhibit G, the other exhibit admitted without objection was a statement by Mr. Brock's attending physician and forwarded to "Mrs. Vern Brock" following his death.

The other exhibits were admitted in evidence over objection of appellant. Exhibit A consists of three pages, the first, a certificate dated February 8, 1962, indicates Vernon C. Brock became entitled to a monthly benefit check from the Social Security Administration, and that Verna J. Brock, shown thereon as his wife, was entitled to a monthly benefit. Page 2 is a certificate of the same date showing that Verna J. Brock, under another claim number, was entitled to a monthly benefit as of August, 1961; page 3 is an explanation of page 2.

Appellant objected to the offer of exhibit A on the ground it contained hearsay material and represented a transaction unknown to Verna, citing Wasson v. Wasson, 73 Idaho 359, 253 P.2d 236 (1953). There was no objection to the authenticity of the instruments which on their face show them to be official records of the So-

---

1. Exhibit H-1 was marked for identification but never admitted in evidence.

cial Security Administration. Under 42 U.S.C.A. 416(h) (1) (A) and 20 C.F.R. § 404.1101, in force at that time, the Social Security Administration was required to establish the marital status of a woman applying for a wife's benefit. This exhibit would fall within the scope of the provisions of I.C. § 9–322[2] as an entry made in the performance of a duty specially enjoined by law. Although this exhibit might contain hearsay, there is no question as to its authenticity or as to its relevancy on the issues then before the court. In *Wasson v. Wasson*, supra, this court was dealing with an issue regarding the probative value of certain exhibits which had not been admitted. The court merely held they had no probative value, for under the particular facts in *Wasson* the party against whom they were offered had no prior knowledge of the contents of those exhibits. There was no error in admitting this exhibit into evidence.

Exhibits B, C, D and E are statements rendered to Vernon Brock regarding hospitalization treatment given Mrs. Vernon J. Brock. Exhibit B is a hospital statement sent to Vernon Brock itemizing hospital care rendered "Mrs. Verna Brock" in January of 1966. Exhibit C is a copy of a physician's service report to Blue Cross of Idaho reflecting Verna Brock as the patient and Vernon Brock as the subscriber. Exhibit D is another physician's service report submitted to Blue Cross of Washington, for surgery and treatment of Verna Brock. Attached to this was a slip from Blue Cross of Washington showing that no membership was found with a request it be sent to another state. Exhibit E is a carbon copy of the service report sent by Blue Cross of Idaho to Vernon Brock as the subscriber for Verna Brock (patient), reflecting payment by Blue Cross of Idaho of $298.05 on the hospital bill for the hospitalization itemized by Exhibit B.

Exhibits B, C, D and E were found in Mr. Brock's business files after his death. Appellant objected to their admission as hearsay evidence, self-serving declarations, and not the best evidence. These exhibits are interrelated, involving the time Verna was taken to the hospital by her sister and reflect the information given the hospital by Verna and her sister. It was not shown that Vernon Brock gave the information to the hospital. Exhibit E, which reflects that payment was made by Blue Cross of Idaho on the basis of Vernon Brock's subscription to Blue Cross, for the services rendered Verna Brock, his wife, would indicate that at sometime the subscriber had registered Verna as his wife under the plan, as otherwise it would not have paid.

■ There was an attempt by the respondent to establish these as admissible under the Uniform Business Records As Evidence Act (I.C. § 9–413, et seq.). However, no witness was called to testify as to their identity and mode of preparation, or whether they were made in the regular course of business. There is no record of any pre-trial hearing concerning admissibility of these exhibits. Under the state of the record, it was error for the trial court to admit these exhibits.

■ Exhibit H consists of a bundle of papers involving federal and state income tax returns of Vernon C. and Verna Brock for various years from 1959 through 1966. When this bundle of papers was offered for admission in evidence, appellant stated that on the basis of the "rule enunciated in Wasson v. Wasson, * * * 73 Idaho 359 [253 P.2d 236], we will enter an objection to this, but other than that, that's the only basis we have for an objection." To further elaborate on *Wasson,* the case involved an action by a father on *quantum meruit* for services against his son's estate; the trial court refused to admit certain income tax reports of the son wherein the

2. I.C. § 9–322. Entries in public or other official books or records, made in the performance of his duty by a public officer of this state, or by another person in the performance of a duty specially enjoined by law, are prima facie evidence of the facts stated therein.

father was claimed as a dependent. This court held there was no error in rejecting these exhibits because there was no showing the father knew of them; they were hearsay and had no probative value in determining the issues. Unlike the situation in Wasson v. Wasson, supra, one of the exhibits, a copy, bears the signature of Verna Brock; all of the letters from the state and federal government are addressed to both Vernon C. and Verna Brock, and copies of the various returns reflect them to be joint returns of both the husband and wife. In this case this bundle of papers did have probative value as to the issues before the court, and many of them, though copies, were in the purported handwriting of the decedent. In light of the limited objection, the trial court correctly admitted these in evidence.

■ Exhibit I is a page from the City Directory published by Johnson Publishing Company for Lewiston, Idaho. This directory shows the names "Brock, Vernon (Verna)" to be residing at the particular address. The appellant objected to this exhibit as being improperly identified. This objection was overruled. This exhibit was sufficiently identified for admission, and, we find no error in its admission. See McCormick on Evidence (1954), § 296, p. 621; Williams v. Campbell Soup Co., 80 F.Supp. 865 (W.D.Mo.1948).

■ Exhibit J is a photocopy of a homestead declaration by Vernon C. Brock which discloses, over his acknowledged signature, that it was executed on behalf of himself and his wife. Appellant objected to its admission on the ground that there was no designation of Verna Brock on that instrument. Admission of this was not error, as the objection in effect was directed to the weight of the exhibit, not to its admissiblity.

■ Although one series of exhibits, i. e., exhibit B, C, D, and E were improperly admitted, this was not prejudicial error as the information contained in these instruments dealing with the issue of marriage between the parties was merely cumulative.

■ The foregoing exhibits which were properly admitted in evidence along with certain testimony support the finding that the decedent, during his lifetime, considered the relationship between himself and Verna that of husband and wife.

In Huff v. Huff, 20 Idaho 450, 118 P. 1080 (1911), this court held that where a marriage has been shown, the law raises a strong presumption in favor of its legality. In Labonte v. Davidson, 31 Idaho 644, 175 P. 588 (1918), this court stated that the presumption of law is in favor of the validity of a marriage and that marriage may be proven by the testimony of one of the parties. In Smith v. Smith, 32 Idaho 478, 185 P. 67 (1919), this court quoted with approval the following language from Hynes et al. v. McDermott et al., 91 N.Y. 451, at 459, 43 Am.Rep. 677,

"'The presumption of marriage, from a cohabitation, apparently matrimonial, is one of the strongest presumptions known to the law. This is especially true in a case involving legitimacy. The law presumes morality, and not immorality; marriage, and not concubinage; legitimacy, and not bastardy. Where there is enough to create a foundation for the presumption of marriage, it can be repelled only by the most cogent and satisfactory evidence.'" 32 Idaho at 482, 185 P. at 69.

Mauldin v. Sunshine Min. Co., 61 Idaho 9, 97 P.2d 608 (1939), held that proof of marriage by the testimony of one of the parties is sufficient, as the presumption in favor of the validity of marriage must be overcome by clear and positive evidence. In Nicholas v. Idaho Power Co., 63 Idaho 675, 125 P.2d 321 (1942), the court stated:

"In Mauldin v. Sunshine Mining Co., [citation] we recently reiterated the doctrine announced in Huff v. Huff, [citation] * * * and authorities from other jurisdictions, all holding as follows:

"'The rule adopted in this jurisdiction is that the law presumes morality, and not immorality; marriage, and not con-

cubinage; legitimacy, and not bastardy, every intendment of the law leans to matrimony. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of proof, the law raises a strong presumption of its legality, casting the burden of proof upon the party objecting and requiring him in every particular, to make plain, against the constant pressure of this presumption the truth of law and fact that the marriage is illegal and void.'" 63 Idaho at 681–682, 125 P.2d at 324.

See also: Thomey v. Thomey, 67 Idaho 393, 181 P.2d 777 (1947).

In the instant case, no direct evidence appears as to any marriage ceremony ever having been performed. However, Mrs. Nines, the appellant, testified that when she and Verna were at the funeral home immediately following her brother's death, the funeral director, who was filling out some forms, asked questions of Verna and Mrs. Nines. She said:

"* * * and he turned to Verna and asked her where they were married, and she said Spokane, and then he asked her when, and she said she didn't know, and Mr. Malcom left the room, and I told her just to give any date."

She stated that following her suggestion, Verna gave a date of the marriage.

Even though there is lack of official records of any formal marriage ceremony, there is no question but that Vernon Brock and Verna did spend over twenty years together in the same household, purportedly, at least, as husband and wife. The witnesses who testified and the documentary proof fully establishes the fact that at least Vernon Brock considered Verna as his wife. At most, the proof by the appellant raises only an inference that their relationship was not that of husband and wife, and there was no proof that there was any impediment to a valid marriage between Vernon and Verna. Although the prior cases considered by this court and discussed above generally dealt with a situation in which there had been a marriage ceremony with an attack on the validity of that ceremony by reason of a claimed disability of one or the other of the parties, yet, where the proof has established that the parties themselves considered they were married, the presumption of validity should attend. We find no error by the trial court in concluding the parties were married.

The judgment is affirmed. Costs to respondent.

McQUADE, C. J., and DONALDSON, SHEPARD and SPEAR, JJ., concur.