(No. 17734.—Reversed and remanded.)
MERYL L. GAHAN, Appellee, *vs.* FLORA B. GOLDEN,
Appellant.

*Opinion filed June 23, 1928.*

1. WILLS—*meaning of the word "residue."* The word "residue" means that which remains of something after taking away a part of it, and the "residue" of an estate means what has not been particularly devised by will.

2. SAME—*whole will must be considered, whether typed or in writing.* The whole will must be considered and effect given to each sentence, phrase or word, if it is possible to do so, in determining the testator's intention; and where the major portion of the will is typewritten, a clause written in with pen and ink must be given due consideration with the rest of the will, where it is found to have been inserted before the execution of the will.

3. SAME—*when children take vested remainder.* Where a testator provides that after the death of his wife all of the property remaining shall go to his children in equal parts, or share and share alike, the remainder to the children is vested.

4. SAME—*when subsequent clause limits fee under section 13 of Conveyances act.* Although a testator has given a devisee such an estate as must be regarded as a fee under section 13 of the Conveyances act, a subsequent provision giving a remainder to other parties after the death of the first taker must be held as limiting the prior devise to a life estate where a consideration of the whole will discloses such intention, regardless of whether the subsequent devise immediately follows the devise of the fee; but the language of the clause creating the limitation must be as clear as that of the prior clause devising the fee.

5. SAME—*general rule as to when subsequent limitation is repugnant and void.* Where the first devisee is given an absolute and unlimited right to dispose of the property devised, and words of inheritance or words necessary at common law to give an estate in fee simple or an absolute interest in the personal estate are used, a subsequent devise over upon the death of the first taker must be held repugnant and void; and such devise over cannot take effect as an executory devise, because the limitations are inconsistent with the absolute estate or power of disposition expressly given or necessarily implied by the will.

6. SAME—*when gift over of "residue" does not give first taker power to dispose of fee.* Where a testator after making specific

devises or bequests gives his wife "all the rest, residue and remainder" of the estate, a subsequent clause giving "the residue of this my estate, at the death of my wife," to the testator's daughters does not confer power on the widow to dispose of the fee, as the word "residue" does not mean what remains unexpended or unused by the widow at her death but the subsequent clause has the effect of limiting the fee given in the first clause by creating a remainder in the daughters.

7. SAME—*terms of a will cannot be varied by parol evidence.* The intention of the testator expressed in his will must govern in the interpretation of it, and such intent as is expressed cannot be varied or defeated by resorting to oral evidence.

8. SAME—*parties holding undivided remainder in fee are entitled to partition.* Remaindermen in fee of undivided interests in land subject to an unexpired life estate are entitled to partition.

9. SAME—*when children take remainder in personal as well as real estate.* Where a testator devises and bequeaths, after the payment of his debts, funeral expenses and specific legacies therein mentioned, all real and personal property to his wife for life with remainder to his children, the wife takes a life estate in the real estate and the personal property and the children the remainder in both the real and personal property.

10. SAME—*when widow, having only a life estate, may be required to give security for corpus of personal estate—trust.* Where the testator's widow is given all the real and personal estate for life with remainder in the entire estate to other devisees, in a suit brought by an heir of one of the remaindermen for partition of the real estate and an accounting of the personal property the widow may be required to give security for the *corpus* of the personal estate; but only her life interest therein should be charged with a trust for the education of one of the testator's daughters, where the devise to the widow is coupled with the request that she provide such education, and there are no other words expressing an intention to charge the *corpus* of the personal property with such trust.

11. HOMESTEAD—*widow is not entitled to homestead in personal estate.* A widow may have a homestead in the real estate devised to her if the facts show that she is entitled to such an estate, but she is never entitled to a homestead in personal property.

12. PARTITION—*when court may determine widow's award.* A delay of seven years from the grant of letters of administration ordinarily bars the right to a widow's award unless some valid reason is shown for the delay; but the circuit court, in a partition suit instituted by an heir of an undivided interest in remainder

330—40

more than seven years after the granting of letters testamentary, may adjudicate the question whether the widow is entitled to have the award allowed and paid, where such question is submitted to the court without objection and where the suit involves an accounting of the personal estate by the widow, who was given a life interest therein.

APPEAL from the Circuit Court of Clay county; the Hon. F. R. DOVE, Judge, presiding.

SMITH & SMITH, for appellant.

HAROLD S. WILLIAMS, (WALTER M. PROVINE, of counsel,) for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Allen E. Golden, a resident of Clay county, died testate on July 31, 1918, seized of a large amount of real estate and possessed of several thousand dollars' worth of personal property. He left surviving him as his only heirs-at-law, Flora B. Golden, his widow, and his two children, Marjorie M. Golden, of the age of eleven years and Ruth E. Gahan, of the age of twenty-one years. His will was admitted to probate by the county court of Clay county and his widow was appointed and qualified as executrix. She administered the estate and paid the debts and legacies and was by order of the county court discharged and the estate declared closed. By the second clause of his will, after providing for the payment of his debts and funeral expenses, Golden devised to his daughter Ruth a store building in the town of Flora, Illinois, and bequeathed to her $1000 of insurance covered by a policy in the Modern Woodmen of America. By the third clause of his will he bequeathed to his wife, to be held in trust for his daughter Marjorie until she reached the age of eighteen years, twenty shares of stock of the First National Bank of Flora and $1000 of insurance covered by a policy in the Ætna Life

Insurance Company, which were to be kept invested and the interest accumulated until Marjorie reached the age aforesaid, at which time they were to become hers absolutely and the trust dissolved. The fourth and last clauses of the will provide as follows:

"*Fourth*—I give, devise and bequeath all the rest, residue and remainder of my estate, both real, personal or mixed, to my beloved wife Flora B. Golden, desiring of her only that she give to Marjorie an education in music such as was given Ruth.

"The residue of this my estate, at the death of my wife Flora B. Golden to go to my two daughters Ruth E. Gahan and Marjorie M. Golden, share and share alike.

"Lastly, I make, constitute and appoint Flora B. Golden to be executrix of this, my last will and testament, hereby revoking all former wills by me made, and ask that she be permitted to serve as executrix without the usual bond."

It is disclosed by the pleadings and the evidence in the record that Golden was sixty years of age at the time of his death. He was a successful business man and trader and had accumulated approximately 1000 acres of land in Clay county. This land was in small tracts, situated in three different townships, and was in the main unimproved and unproductive land, and the majority of it is referred to in the evidence as "thin" or "trading" land. He was also the owner of two business properties and twenty-six or more pieces of city property in Flora, some of which were vacant lots, and two of the lots were occupied by him as his homestead at the time of his death. He was possessed of personal property consisting of cash, notes, mortgages, bonds, bank stock, judgments, tax sale certificates, cattle, mules, farming implements and other chattels, which, after the payment of his debts, funeral expenses, the specific legacies under his will and the costs of the administration of his estate, amounted to $14,459.04. His will was executed a few days before his death while he was in a hospital in

St. Louis, Missouri, awaiting an operation, which terminated fatally. The entire will, with the exception of the signatures of the testator and the attesting witnesses and the concluding sentence in the fourth clause, was either printed or typewritten, the typewritten part having been inserted in the blank spaces of a printed form. The original will was certified and transmitted with the record for our inspection. The concluding sentence of the fourth clause was written with pen and ink, and is as follows: "The residue of this my estate, at the death of my wife Flora B. Golden to go to my two daughters Ruth E. Gahan and Marjorie M. Golden, share and share alike." It is apparent from an inspection of the original will that the pen and ink sentence was inserted in the will after it had been first drafted with a typewriter, and it is in the handwriting of the attesting witness J. O. Pride, an attorney whom the testator had employed to prepare his will.

At the time the will was executed the testator's daughter Ruth was married to appellee, Meryl L. Gahan. She had been given an education by her parents in music, voice culture and harmony, and had been given three diplomas, one from the Kroeger School of Music of St. Louis and two from Forest Park University of St. Louis. She died intestate in 1920, leaving her surviving her husband, Flora B. Golden, her mother, and Marjorie M. Golden, her sister, as her only heirs-at-law. After the death of Ruth her husband filed his bill in the circuit court of Clay county against Flora B. and Marjorie M. Golden and others, alleging that by the last will and testament of Allen E. Golden his property, both real and personal, except that specifically devised and bequeathed to his two daughters under the second and third clauses of his will, vested in fee simple and became the absolute property of his two daughters at the death of the testator, subject only to a life estate therein of his widow, and that on the death of Ruth her share of the property ·devised and bequeathed to her by the will de-

scended to her heirs-at-law, of whom her husband is one.
The bill prayed for partition of the real estate between
appellee, Flora and Marjorie, and that Flora be required to
state an account of all items of personal property received
by her from the estate of the testator in which she has a
life estate and that she exhibit such property to the court,
and if any such personal property has been converted to
her personal use, the amount thereof be determined and that
she be required to account for the same.   Flora and Mar-
jorie answered the bill and denied that the appellee had any
interest in any of the real estate or personal property of
which the testator died seized or possessed, and averred that
all of the testator's property, both real and personal, not
specifically devised under the second and third clauses of
the will, became vested in Flora under the terms of the
fourth clause of the will, in fee simple if real estate and as
her absolute property if personalty.   All of the other de-
fendants, who are interested as tenants or mortgagees or
who hold other similar interests, adopted the answer of
Flora and Marjorie as their answer to the bill.   Replica-
tions were filed to the answers, and there was a hearing
upon the issues formed by the court in open court.

There is virtually no dispute as to any of the facts in
this case.   The store building specifically willed to Ruth E.
Gahan was disposed of and the proceeds thereof divided
among her husband, mother and sister, and the personal
property bequeathed to her descended to her husband.   No
question arises as to the property bequeathed to Marjorie
M. Golden.   It is therefore to be understood that all ques-
tions arising on this appeal relate solely to the residue of
the property, real and personal, devised and bequeathed by
the fourth clause of the will and described in the bill for
partition.

Appellant contends that under the proper construction
of the fourth clause of the will she is entitled to all of the
real estate in fee simple devised by the testator by the fourth

clause, and that she is the sole and absolute owner of all of the personal property thereby bequeathed. The court found that the testator at the time of his decease occupied two of the lots in Flora as his homestead, and that Flora B. Golden has continuously resided on said lots and occupied the same as a homestead and is now entitled to a right of homestead therein, and that she is also entitled to a life estate in all the lands devised by that clause; that on the death of the testator the remainder in fee of the land so devised vested in Ruth E. Gahan and Marjorie M. Golden in equal shares as tenants in common, subject to the rights of Flora; that upon the death of Ruth her share in such real estate descended to her husband, her mother and her sister, as her only heirs; that appellee is entitled to an undivided one-fourth or three-twelfths, Flora to an undivided one-sixth or two-twelfths, and Marjorie to an undivided seven-twelfths of such remainder in fee, subject to the life estate and homestead right of Flora. The court further found that the share of appellee in the real estate is incumbered by a first mortgage given by him and Faun Gahan, his wife, to Lee T. Nichold for $1500, and by a second mortgage given by him and his wife to A. J. Gahan in the sum of $2500, which mortgages are liens on his share, and that no other persons have any interest in the real estate devised by the fourth clause of the will and described in the bill for partition. It was further ordered and decreed by the court that a division and partition of the premises be made among the parties in accordance with said findings, and commissioners were appointed to make such division and partition.

Section 13 of our Conveyance act provides that "every estate in lands which shall be granted, conveyed or devised, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple estate of inheritance, if a less estate be not limited by express words, or do not appear to have been granted, conveyed or devised by construction or operation of law."

Under that section of the statute appellant would, under the first sentence of the fourth clause of the will, take a fee simple estate in the lands therein devised if the pen and ink clause had not been added. By the addition of this latter clause the interest of the widow in the real estate was cut down to a life estate and the remainder in fee was devised to the two daughters of the testator, subject to the life estate and homestead of the widow, as decreed by the court. The plain meaning and provision of the pen and ink clause is that the residue of the real estate devised to the widow in the first sentence of the fourth clause, at the death of the testator's wife is to go to his two daughters, Ruth and Marjorie. The word "residue," as defined by Bouvier in his Law Dictionary, means that which remains of something after taking away a part of it, "as the residue of an estate, which is what has not been particularly devised by will." So the property devised by the pen and ink clause to Ruth and Marjorie is the real estate devised by the first sentence of the fourth clause that shall remain at the death of their mother, which is clearly a fee simple estate, out of which was carved a life estate to the widow. This pen and ink clause was inserted in the will, according to the finding of the court, after the will had been first drafted with a typewriter but before the testator executed the will. This finding was clearly warranted. Both sentences of the fourth clause of the will must therefore be considered as parts of the will and with equal claim upon the attention of those who shall construe the will. We are not at liberty to disregard the pen and ink clause or sentence any more than we are at liberty to disregard the first sentence of the fourth clause, unless the construction of the entire will results in a conclusion that such repugnancy exists between those two parts of the fourth clause as to make the second part or sentence void. It is elementary that the whole will must be considered and effect given to each sentence, phrase or word, if it is possible to do so, in determining the testator's

intention. (*Giles* v. *Anslow*, 128 Ill. 187.) Where a testator provides that after the death of his wife all of the property remaining shall go to his children in equal parts, or share and share alike, the remainder to the children is vested. *Strickland* v. *Strickland*, 271 Ill. 614.

The decisions of this court have at all times given full force and effect to the provisions of our statute on conveyances, but we have at all times recognized that the concluding clause of that statute, "if a less estate be not limited by express words, or do not appear to have been granted, conveyed or devised by construction or operation of law," is just as binding on this court as are the words preceding that clause. We have repeatedly held under this same statute, that where a later clause in a will is repugnant to a former provision of the will which *prima facie* devises a fee, the later clause, being the last expression of the testator's intention, must prevail and must be considered as intended to modify or abrogate the former provision, and that it does not matter whether the later provision immediately follows the clause or part of the will that devises a *prima facie* fee or whether such later clause is found in some other portion of the will. There are two rules that also govern in construing a will, apparently falling under the provisions of said statute. The first one is, that the intention of the testator must be ascertained from a consideration of the whole will, and if it was intended that the estate should be less than a fee simple, it is wholly immaterial in what part of the will such intention is manifested. The second rule is, that the language of the clause creating the limitation must be as clear as that of the first clause creating the estate, and if it shows clearly any intention to impose a limitation upon the estate that intention will be given effect. *Glass* v. *Johnson*, 297 Ill. 149; *Giles* v. *Anslow, supra; Meins* v. *Meins*, 288 Ill. 463; *Wiltfang* v. *Dirksen*, 295 id. 362. See, also, Kales on Estates and Future Interests, (2d ed.) sec. 156.

We have considered the argument of appellant that it is a rule of construction and the policy of our law to construe a will as giving the first taker a fee where such a construction is not inconsistent with the provisions of the will, and have considered all the cases cited by appellant where that rule applies. We are clearly of the opinion that the provisions of this will were properly construed by the circuit court as to the real estate thereby devised. Other cases relied upon by appellant to sustain her contention that the fee simple title cannot be cut down by other clauses because of repugnancy are distinguishable. In the cases relied upon which follow the rule laid down in *Wolfer* v. *Hemmer*, 144 Ill. 554, and *Wilson* v. *Turner*, 164 id. 398, words of inheritance are added and the gifts over are held to be void, but those cases only recognize that an attempted gift over is void where words necessary at common law to give a fee simple in real estate or an absolute interest in personal estate are used. The gifts over in those cases are held to be void because the first devise or bequest gives an absolute and unlimited right to the first taker to dispose of the property so devised or bequeathed. Such a devise of real estate cannot take effect as an executory devise, because the limitations are inconsistent with the absolute estate or power of disposition expressly given or necessarily implied by the will.

The pen and ink sentence was unnecessary to confer a power upon the widow to dispose of the fee in the realty or the *corpus* of the personal property and had no such effect or purpose. The preceding sentence, unrestricted by any other language, being sufficient to transfer the estate in fee simple to the testator's widow, with the power of unrestricted disposition necessarily incident to such estate, could not add to that power or increase the estate or add to the power of disposition. The only object or effect the subsequent sentence could have was the limitation of the estate granted by limiting the fee simple, which would go

to the widow by the unqualified language of the preceding sentence, so as to give the property at the death of the widow to the two daughters, thus reducing the estate given to the widow to a life estate. The words "the residue of this my estate" do not mean what remains unexpended or unused by the widow at her death. The grammatical and legal construction of this sentence is, that at the death of the wife the property devised and bequeathed to her is to go to the testator's two daughters, share and share alike. This is in accordance with the construction given to the somewhat similar devise of the real estate in the case of *Catlett* v. *DeRousse,* 310 Ill. 343. That devise was in these words: "I give and devise all the rest, residue and remainder of my real estate to my wife, Josephine Catlett, and after the death of my wife, Josephine Catlett, it is my will that all the residue of whatever kind, name and nature, shall go to my son, Henry Catlett." In that case the "residue" which was devised to the son after the death of the widow was held to be the same property as the "rest, residue and remainder" which was devised to the widow, and it was further held that the devise was to the widow for life with remainder to the son.

The interests of the two daughters became vested interests at the death of the testator. Appellee's interest in the residuary property of the testator became vested upon the death of his wife, and he immediately became a tenant in common in the residuary property with the widow and Marjorie, who also took vested interests in the property of which Ruth died seized and possessed. Remaindermen in fee of undivided interests in land subject to an unexpired life estate are entitled to partition. As to the real estate, the decisions of this court entitle appellee, who is a remainderman in fee, to partition, notwithstanding the fact that the widow has in such real estate a life estate. *Scoville* v. *Hilliard,* 48 Ill. 453; *Scharpf* v. *Schmidt,* 172 id. 255; *Mc-Ginnis* v. *Campbell,* 274 id. 82; *Wells* v. *Dalies,* 318 id. 301.

The evidence shows, and the court found, that the costs of administration and the legacies mentioned in the will were duly paid by the testatrix; that she has made no report or accounting as to what disposition she made of the personal property; that she has converted the notes, moneys and other items of personal property into cash; that she realized therefrom, after paying the costs of administration and the legacies, the sum of $14,459.04, and that she has re-invested a part of said sum in other securities in her own name, individually and not as trustee. The court also found and decreed in paragraph 17 of the decree that appellee and Marjorie are entitled to and owners in equal shares of the amount aforesaid, "subject to the life estate and interest and right of homestead of the said Flora B. Golden therein and thereto." Where a testator by his will devises and bequeaths, after the payment of his debts and funeral expenses and specific legacies therein mentioned, all real and personal property to his wife for life and the remainder to his children, the wife takes a life estate in the real estate and the personal property and the children the remainder in both the real and personal property. Chief Justice Marshall in *Smith* v. *Bell*, 6 Pet. 68, said: "The rule that a remainder may be limited after a life estate in personal property is as well settled as any other principle of our law. The attempt to create such limitation is not opposed by the policy of the law or by any of its rules. If the intention to create such limitation is manifested in a will the courts will sustain it." This rule of law has been followed by this court and the above language quoted from Chief Justice Marshall has heretofore been quoted by this court with approval. The rule is practically the same in its application to both real and personal property. *Healy* v. *Eastlake*, 152 Ill. 424; *Vanatta* v. *Carr*, 223 id. 160; *Ward* v. *Caverly*, 276 id. 416.

A widow may have a homestead in the real estate devised to her if the facts show that she is entitled to such

an estate, but she is never entitled to a homestead in personal property. By the court's decree as to the personal property, that appellee and Marjorie are the owners thereof "subject to the life estate and interest and right of homestead of the said Flora B. Golden," it may have intended that appellee and Marjorie were the owners of the personal property subject to the widow's right to a personal award, which is allowed to her under section 74 of the Administration act. Under that section of the statute a widow is in this State entitled to such an award in all cases, to the exclusion of all debts, claims, charges, legacies and bequests, except funeral expenses, whether her husband died testate or intestate. All such claims against this estate have been paid except the widow's award, and there was an abundance of personal property over and above such claims to pay such award. By section 76 of the Administration act the right of a widow to her award shall in no case be affected by her renouncing or failing to renounce the benefit of the provisions made for her in the will of her husband, or otherwise. The facts in this case show clearly that the widow was under the misapprehension that she was entitled absolutely to all of the real and personal property devised and bequeathed by the fourth clause of the will. She was, no doubt, so advised. She honestly and in good faith proceeded to administer the estate under that misapprehension. The correctness of her conclusion does not seem to have been challenged until the present suit was brought, more than seven years after her husband had died. A delay of seven years from the grant of letters of administration in applying for and having the widow's award set out to her ordinarily bars the right to such an award unless some valid reason is shown for the delay. (*Koelling* v. *Foster,* 254 Ill. 494.) The county court, in the exercise of its equitable jurisdiction, undoubtedly has jurisdiction at a subsequent term to set aside an order discharging an executrix and to have allowed and paid the widow's award where the same

was not previously done by reason of fraud, accident or mistake. The circuit court would undoubtedly have the right to adjudicate the question whether the widow in this case was entitled to have an award allowed and paid her if such matters were submitted to the court without objection, as appears to have been done in this case. Appellee in this appeal merely seeks to have sustained the decree of the circuit court and has assigned no cross-errors.

It was stipulated by the parties that appellant has expended for the education of Marjorie the sum of $3411.71, all but $800 of which has been expended toward a musical education. Under the provision of the fourth clause of the will the testator expressed a request to the widow "only that she give to Marjorie an education in music such as was given Ruth." The court decreed that appellant should not charge the education of Marjorie against the *corpus* of the property devised and bequeathed by the fourth clause of the will. Since our construction of the will is that appellant was given only a life estate in the residue of the testator's estate, his desire that she give Marjorie an education could not under any theory impress the *corpus* of the property with a trust for the musical education of Marjorie, against the contention of appellee, in the absence of other words expressing such intention. If such precatory words were sufficient to impress the devise with a trust for Marjorie's education, the property so impressed could only be that given to the widow by the fourth clause of the will, which is only a life estate.

The court required the widow to give security for the amount of the personal property in which she had a life interest, the object of her giving security being to require her to keep the full amount of such property in her possession during her life and to only use and expend the income therefrom. This bond was apparently required to be given in the amount of $14,459.04, the amount of such personal property after deducting costs of administration and claims

against the estate and the legacies, but did not require the payment out of said sum of the amount of any award allowed or to be allowed to the widow. It was proper for the court, under the holding of this court in the cases of *Welsch* v. *Savings Bank,* 94 Ill. 191, and *Pratt* v. *Skiff,* 289 id. 268, to require the widow to give personal security for the actual amount of the *corpus* of such personal property as appellee and Marjorie will be entitled to at the death of the widow. The last clause of the will is not to be considered in determining this question. The part of the last clause which merely requests that the widow be permitted to serve as executrix without the usual bond, has no reference whatever to the duty or obligation of the widow to give personal security to maintain the full amount of the *corpus* of the personal property intact during her life that was vested in appellee and Marjorie.

We agree with appellant that it is most probably true that the testator, at the time he made his will, did not contemplate the making of any such disposition of his property as we have been forced, under the law, to declare he did make by the language employed in his will. The law is that it is the intent of the testator expressed in his will that must govern in the interpretation of it, and that such intent as is expressed cannot be varied or defeated by resorting to oral evidence.

As we have already explained, the decree of the court as to the personal property, that the interests of appellee and Marjorie are "subject to the life estate and interest and right of homestead of the said Flora B. Golden," is not sustainable under the law. If that provision of the decree means that appellee's and Marjorie's interests are subject to the life estate of the widow and to her right to a widow's award, the decree does not provide for the allowance and determination of the amount thereof either by the county or circuit court or reserve that question for the further consideration of the court. It appeared on the hearing that

two tracts of land owned by the testator and sold by him before his death were not included in the bill for partition. There is due from the purchasers about $1475 and interest on one of those tracts and about $950 and interest on the other tract.  If paid by the purchasers the amount of the personal property or money in the widow's hands and for which she is to give bond will be increased by the amount paid by the purchasers.  The widow also claims that appellee and Marjorie should bear an equitable portion, to be fixed by the court, of the amount of certain special assessments she has paid on lots in the town of Flora and on the amounts that she has paid out for building fences and houses and other improvements on certain lands.  The consideration and determination of said matters and of other matters reserved by the court will also have much to do with the determination of the amount of the bond to be given by the widow, as well as the fixing of the amount of the widow's award, if the amount of it has not already been agreed upon by the parties.

The decree of the circuit court will be affirmed in all its provisions as to the real estate devised by the will and reversed as to the personal property bequeathed, and the cause will be remanded, with directions to modify the decree as to the personal property so as to correctly set forth the decision of the court as actually rendered and for any further proceedings that may be necessary to save to the widow her award, if such was intended by the decree.  The costs in this court will be taxed one-half to appellant and the other half to appellee.

*Reversed and remanded, with directions.*