In the Matter of the Estate of Wilbur J. Gullett, Deceased.

Alan Wyneken, Petitioner-Appellant, v. Logan County Bank, Administrator with Will Annexed of the Estate of Wilbur J. Gullett, Deceased, Respondent-Appellee.

Gen. No. 10,952.

Fourth District.

February 29, 1968.

Edwin C. Mills, of Lincoln, for appellant.

No appearance made in behalf of appellee.

SMITH, P. J.

The appellant, Alan Wyneken, a son-in-law of the testator, appeals from an order of the Probate Division of Logan County Circuit Court removing him as the sole remaining executor of the Gullett will.

The chronology of events are briefly these: Wyneken and a coexecutor were issued letters testamentary on June 6, 1966, and about this same time, Wyneken and his wife, one of the three daughters of the testator, moved into the residence property, an asset of the estate, under an arrangement with the coexecutor that they would pay $100 per month rent. It was decided that not too much activity should take place in the estate until the time for filing a will contest would pass. The will directed the executors to liquidate the estate and divide it among the three heirs. In April, 1967, they listed the residence property at $32,000 and announced that it would be available for inspection after June 1, 1967. A local real-

estate broker informed the coexecutor that when he undertook to show the house in the latter part of June, Mrs. Wyneken informed him that the house would not be available for a showing for a month or two. The coexecutor tried to contact Wyneken and failed. On July 5, he wrote a letter to Wyneken reciting the above facts, complained of the failure to pay the rental, the failure to pay the 1966 real-estate taxes, and complained that he was embarrassed at not being able to show the property and advising Wyneken he should avoid situations where his own personal interests by self-dealing are brought into conflict with the interests of the estate and that he had placed himself in a very highly vulnerable position and that he considered the situation serious. He stated that unless Wyneken and his wife vacated the residence by July 15, and deposited the delinquent rentals, he would submit to the court his resignation as coexecutor with the request that both of them be replaced with a successor executor. Wyneken claimed he never got this letter. On July 31, the coexecutor filed a petition for leave to resign, tendered his resignation, and suggested that both coexecutors be replaced with a successor. This petition was set for hearing for September 5 and Wyneken and the three heirs were notified. None of them appeared. The coexecutor presented a copy of his letter of July 5, and was interrogated by the court about the condition of the estate. Leave to resign was granted and the coexecutor was ordered to file a report within 10 days. As a result of this hearing, the court on its own motion issued a citation against Wyneken directing him to show cause why he should not be removed as executor because of (a) waste and/or mismanagement of the estate; (b) conducting himself in such a manner as to endanger his cofiduciary. This was served on Wyneken on September 6, and the hearing was set September 18. Wyneken appeared without counsel and was inter-

rogated by the court about the condition of the estate. The coexecutor was not present at the moment and at Wyneken's request, he was called over. The coexecutor advised the court that Wyneken had asked him to continue or withdraw his resignation, but that his decision was irrevocable and his resignation was final. At the conclusion of the hearing, the court revoked Wyneken's letters.

On October 17, Wyneken filed a motion to vacate this order of revocation and attached to it written statements of the three heirs-at-law who joined in his motion and released the estate and the executor from liability for damage for the supposed mismanagement of said estate. At this hearing, the coexecutor testified not only as to matters covered in his September 5 testimony, but also with respect to the lapse of insurance on the house, the rental payments, the status of an Oldsmobile automobile that was being used by and driven without insurance by Wyneken. At the conclusion of this hearing, the court on November 3, entered an order specifically finding that Wyneken had failed to pay the 1966 taxes, that both executors had allowed the insurance on the house to lapse, that Wyneken transferred title to the decedent's car to his own name and failed to keep it insured, that Wyneken had no bookkeeping system and mingled funds of the estate of Wilbur J. Gullett and Mildred S. Gullett, his predeceased wife, that Wyneken had failed to make proper payments of the rentals incident to his tenancy of the house and that neither executor knew anything about some land in Jefferson County. Wyneken's motions to be reinstated as executor were denied and this appeal follows.

It is urged on appeal that the testimony taken on September 5 during the absence of Wyneken should not have been considered by the court in his September 18 order of removal and that testimony taken

thereafter had no bearing on the validity of the original order. This position, we think, is without merit. Wyneken had a choice—either to appeal from the order of September 18 or to do as he did—file a motion to vacate that order. A further and full hearing was conducted on this motion and further testimony taken. The issue was in effect retried. We need not consider whether the evidence before the court on September 18 was adequate to warrant the removal or sufficient to sustain the order of removal. The subsequent hearing furnished a full opportunity to correct the order of revocation, if in error. It is true that the taxes were paid after the citation was issued—it is true that the rent was paid up after the citation was issued. The conduct of the respondent and management of the estate does not measure up to the standard of care and attention that a reasonable businessman would exercise in the administration of his own personal affairs. As Chief Judge Cardozo said in Meinhard v. Salmon, 249 NY 458, 164 NE 545, and quoted in Nonnast v. Northern Trust Company, 374 Ill 248, 29 NE2d 251, thusly:

> ". . . A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. . . ."

The past is frequently the prologue for the future. In re Estate of Glenos, 50 Ill App2d 89, 97, 200 NE2d 65, 68, it is stated:

> "The fact that the mismanagement or attempted fraud here was merely incipient, with the estate suffering no pecuniary loss, should not be considered relevant in proceedings to remove the executor for mismanagement, as one reason for removal is certainly to protect the estate from future mismanagement."

To this end, it is clear that the coexecutor, a lawyer, resigned because of want of cooperation on the part of the respondent. Neither the respondent nor the heirs were concerned when the coexecutor filed his petition to resign. The coexecutor was sufficiently concerned to resign. The issuance of the citation prompted the payment of taxes and the rent. The respondent was given a second full opportunity to justify his conduct on the motion to vacate his order of removal. He well knew that his coexecutor had filed a petition to resign. He inquired neither of the executor nor of the court why this was so. He did not appear at the hearing where the reasons might have reasonbly been ascertained. In Glenos, it is stated that an attoreny for an estate is under a duty to inform the court of any suspicion of wrongdoing on the part of an executor. The coexecutor, also as an attorney, was an officer of the court and in our judgment was under a dual obligation to inform the court of possible wrongdoing apparent to him. It seems clear that the coexecutor here was alarmed and that the court was alarmed at the conduct of the respondent. This concern is not without foundation in this record. It was clearly sufficient to trigger an appropriate inquiry by the court and the inquiry was properly initiated.

█ █ The respondent likewise contends that the coexecutor, being an attorney, was the guiding light in the estate and respondent depended upon him for guidance. If this is the case, it seems quite strange that he did not answer the coexecutor's telephone calls nor did he consult him from the time his petition to resign was filed in July until the citation was actually issued upon the respondent. He did not consult him concerning the transfer of title to the automobile. He did not consult him about the two-month delay after June 1 for showing the property which they had advertised. He offered no substantial explanation for any of the dilatory action or nonaction on his part at any time. The coexecutor, as well

410

as the court, was justified in the conclusion that he conducted himself in such a manner as to endanger his cofiduciary or the surety on his bond, a ground for removal set forth in Ill Rev Stats 1967, c 3, § 276. We are not justified in disturbing the finding of the trial court unless we can say that that finding was against the manifest weight of the evidence. On this record, this we cannot do.

█ The fact that Wyneken wants to be reinstated and that the heirs are asking him to be reinstated is by no means conclusive. The orderly disposition of estates in an expeditious manner overrides the desire or the willingness of the heirs in an estate to approve its administration in a careless and inattentive manner. By no stretch of the imagination was the court's action precipitous, arbitrary, or capricious. We think the trial court properly concluded that yesterday's conduct provides the pattern for tomorrow's activities. The proper administration of this estate can only be assured by the appointment of an independent administrator with the will annexed and this the court has done and its action should be and it is hereby affirmed.

Affirmed.

CRAVEN and TRAPP, JJ., concur.