*In re* ESTATE OF ELMER C. HUBBARD, Deceased.—(MARVIN BUHRMAN, Adm'r of the Estate of Grace Hubbard, Petitioner-Appellee, *v.* LORENE KILEY, Ex'r of the Estate of Elmer C. Hubbard, *et al.,* Respondents-Appellants.)

Second District   No. 76-419

Opinion filed October 26, 1977.

Louis E. Neuendorf, of Sandwich, for appellants.

Simpson & Simpson, of Aurora, for appellee.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Elmer C. Hubbard died testate on February 10, 1971, at his home at 544 South Broadway, Aurora, Illinois. He was 78 at the time of his death and left surviving as his only heirs-at-law his widow, Grace Hubbard, also 78, and three adult children by his first marriage, namely Lorene Kiley, Lloyd Hubbard, and Joyce Kreitz.

Subsequent to oral argument but prior to the filing of the opinion in this case, Mrs. Hubbard died. On September 28, 1977 we allowed the motion of the administrator of her estate to be substituted as the petitioner-appellee. Therefore, all references in the opinion to petitioner refer to both Mrs. Hubbard and her administrator.

Mr. Hubbard married his second wife, Grace, in 1956 when they were each approximately 63 years old. Upon her marriage to Mr. Hubbard, Grace Hubbard moved into the house at 544 South Broadway where the couple then resided until Mr. Hubbard's death in 1971. Mrs. Hubbard continued to live there until her death in 1977. The premises at 544 South Broadway consist of three apartments, one occupied by the Hubbards as their residence and two others which were rented out.

In 1960 Mr. Hubbard retained an attorney to draw his last will and testament. The will named Lorene Kiley as executrix. Mrs. Kiley testified that her father gave her a copy of the will.

Prior to his death in 1971, Mr. Hubbard suffered several strokes. During this period he requested his wife to secure his will from the safe deposit box and thereafter the will was kept in the house. Also at this time Mr.

Hubbard told his wife that at his death she could remain in the house for as long as she lived.

On the morning of February 10, 1971, Mrs. Hubbard telephoned Lorene Kiley and told her of her father's critical condition. Mrs. Kiley came over immediately followed by a doctor who pronounced Mr. Hubbard dead. Mrs. Hubbard then turned over a bag of papers to Mrs. Kiley, among which she assumed was her husband's will.

Mrs. Kiley took the bag home, but did not examine it for several days. When she finally did examine the contents of the bag she discovered her father's will. She was uncertain what to do for several weeks and then finally decided to seek the advice of the attorney who had drawn the will for her father; he explained the will to Mrs. Kiley and advised her that there was nothing she needed to do at that time.

In 1975, Mrs. Hubbard contacted her step-daughter, Mrs. Kiley, to ask if she could have her one-third share of the house as she was aging and could no longer keep up the house. Mrs. Hubbard, since the death of her husband, had collected the rents from the apartments, paid the taxes and insurance thereon and looked after the maintenance and repairs of the premises. Now, however, she wished to take up residence at a retirement home. Mrs. Kiley refused Mrs. Hubbard's request.

Mrs. Hubbard then sought legal advice. Her attorney, upon ascertaining that Elmer Hubbard's will had not been filed, sent a letter to the attorney who had drawn the will requesting the filing of the will for probate. The will was filed and letters testamentary were issued to Mrs. Kiley. Within seven days of the admission of the will to probate Mrs. Hubbard renounced the will. She also requested a widow's award and reimbursement for the funeral expenses which she had paid. When no action was taken on her request she filed a petition to remove Mrs. Kiley as executrix. Mrs. Kiley filed an answer and a hearing was held. The order of the trial court removed Mrs. Kiley as executrix; allowed Mrs. Hubbard $5,000 as a widow's award; found she had a vested estate of homestead in the property at 544 South Broadway; allowed her claim for the funeral bill; and found her renunciation of the will valid. Mrs. Kiley appeals from this order.

We consider first the removal of Mrs. Kiley as executrix. Section 276 of the Probate Act, (Ill. Rev. Stat., 1973, ch. 3, par. 276), governs removal of executors and sets forth one or more grounds for revocation of letters testamentary. (*In re Estate of Long* (1971), 1 Ill. App. 3d 372, 273 N.E.2d 160.) Section 276 provides:

"On the verified petition of any interested person, or upon the court's own motion, the court may remove an executor, administrator, administrator to collect, guardian, conservator or conservator to collect for any of the following causes:

(a) When the executor, administrator, administrator to collect, guardian, conservator or conservator to collect:
* * *
(9) becomes incapable of or unsuitable for the discharge of his duties; * * *." Ill. Rev. Stat. 1973, ch. 3, par. 276.

The trial court's order removing Mrs. Kiley reads as follows in pertinent part:

"3. The Court finds that Respondent is unsuitable for the discharge of her duties in that she
(a) for in excess of four years following the death of decedent, without good cause shown and in violation of the Statutes of the State of Illinois, failed to deliver Decedent's will to the Clerk of this Court, and failed to declare her refusal to act as executor or to institute a proceeding to have the will admitted to probate, but instead kept said will in her safety deposit box;
(b) produced said will for probate only after demand made upon her by attorneys for Petitioner;
(c) failed to perform her fiduciary duties towards Petitioner by failing to advise her of her statutory rights as a widow, but instead maintained a policy of silence towards Petitioner in all matters connected with said will;
(d) failed to file an Inventory herein until said matter was raised by Petitioner in her Petition for Removal of Executor, whereupon Respondent filed an Inventory herein;
(e) without good cause has failed to take any action to complete the administration of this estate or to satisfy Petitioners claim for funeral expenses, widow's award, homestead exemption, and right to net one-third of said estate;
(f) without good cause continues to resist actively all of Petitioner's claims to any part of decedent's estate."

■■ The finding of a trial court in removing an executor will not be disturbed unless the finding was against the manifest weight of the evidence. (*In re Estate of Gullett* (1968), 92 Ill. App. 2d 405, 234 N.E.2d 551.) The record amply supports the order of the trial court. The facts in this case clearly establish the statutory ground of "unsuitability" and permits the removal of the respondent as executrix. While we are mindful that Mrs. Kiley acted with the advice of an attorney, the facts of this case demonstrate a course of conduct on the part of the respondent far below the standards imposed upon an executor as a fiduciary in dealing with and in behalf of an estate. *In re Estate of Kuhn* (1967), 87 Ill. App. 2d 411, 231 N.E.2d 97.

Respondent argues that the court may not consider grounds other than those enumerated in section 276 for removing an executor. While we agree with that statement of the case law, the grounds for removal of a representative when he becomes unsuitable for the discharge of his duties adds to the grounds previously available for the removal of a representative and are not to be read as limited only to the circumstances enumerated in the preceding subparagraphs: Each ground is mutually exclusive and cumulative to the others. *In re Estate of Kuhn* (1967), 87 Ill. App. 2d 411, 416, 231 N.E.2d 97, 100.

While respondent contends that as executrix it was her position that petitioner's claims on the estate were estopped or otherwise barred, she has done nothing to resolve the claims one way or the other. Nor do we find persuasive respondent's argument that those events which occurred prior to the issuance of letters to the respondent should have been raised at the time of her petition for letters testamentary and are now "res judicata" for purposes of removing her as executrix. Respondent's unsuitability to serve as executrix is demonstrated in a series of acts and omissions of which those prior to the issuance of letters were a part. We therefore find the respondent was properly removed as executrix.

We turn next to the renunciation of the will by the petitioner. Section 17 of the Probate Act provides:

> "In order to renounce a will the testator's surviving spouse shall file at the time and place provided for herein a written instrument signed by the surviving spouse and declaring the renunciation. The time of filing the instrument shall be as follows: (a) within 7 months after the admission of the will to probate or (b) within such further time as may be allowed by the court if, within 7 months after the admission of the will to probate or before the expiration of any extended period, the surviving spouse files a verified petition therefor setting forth that litigation is pending that affects the share of the surviving spouse in the estate.* * *" Ill. Rev. Stat. 1973, ch. 3, par. 17.

A renunciation of the will was filed on behalf of Mrs. Hubbard, the petitioner, seven days after the will was admitted to probate. However, the respondent contends that petitioner's right to renounce is barred by estoppel, waiver and laches, and that since the death of her husband more than four years ago, petitioner continued to reside in the residence, maintain it, collect the rents and therefor elected to take under the provisions of the will. Respondent relies on the case of *Hunter v. DeMay* (1970), 124 Ill. App. 2d 429, 259 N.E.2d 291.

In *Hunter v. DeMay,* Mrs. Marie DeMay died leaving a will in which she left the fee title of a piece of real estate to the defendant and the remainder of her estate to their seven children. Two years later defendant

executed an agreement to sell the property to the plaintiff. When the plaintiff brought suit for specific performance, defendant answered and counterclaimed that he had been fraudulently induced to sign the contract. The trial court, after hearing evidence, ordered specific performance of the contract. Subsequently, the will of Marie DeMay was admitted to probate; and defendant was enjoined from filing a renunciation of the will. Defendant brought an appeal to this court on all issues. This court affirmed the granting of specific performance and upheld the enjoining of the renunciation of the will as defendant had lived on the property for a considerable period of time after his wife's death, in a manner consistent with an intent to accept the provisions of the will and his conduct should be deemed an election to accept the terms of the will. 124 Ill. App. 2d 429, 438, 259 N.E.2d 291, 295.

■■ The case now before us presents a somewhat different situation. In *Hunter* the renunciation would have jeopardized the rights of an innocent third party, the purchaser, while here the renunciation would have no such effect. Petitioner here had never read her late husband's will, though she testified that through their conversation, she had a general knowledge of what the will provided for her. No steps were taken to settle the estate in that four year period, not even was the will admitted to probate. Until recently no inventory had been filed and no opportunity had been given to present claims, if any, for settlement. Unless this was done or until it was determined in some legitimate manner what debts existed against the estate, the condition and value of the estate left by the deceased could not be known, and the petitioner would be in no position to be called upon to make an election. (*Stone v. Vandermark* (1893), 146 Ill. 312, 34 N.E. 150.) Before making an election one is entitled to know the condition of the estate. (*Richardson v. Trubey* (1911), 250 Ill. 577, 95 N.E. 971.) The fact that petitioner continued to live in and maintain the premises as she had done prior to her husband's death does not support the respondent's contention, in our opinion, that the petitioner knew the condition of the estate for the purpose of making such an election.

■■ The purpose of the statutory provision creating the right of a spouse to renounce provisions of a will and setting forth the method for accomplishing it is to enable the spouse to elect which method of taking would be most advantageous to her. (*Golden v. Golden* (1946), 393 Ill. 536, 66 N.E.2d 662.) Under the facts in this case, petitioner could make such a choice once the will was admitted to probate and not before. Once the will was admitted to probate the petitioner made a timely election to renounce the will. The trial court properly found that the petitioner had validly renounced decedent's will and that her renunciation was not barred by estoppel, waiver or laches.

■■ Nor do we find that petitioner's right to a widow's award (Ill.

Rev. Stat. 1973, ch. 3, par. 178) and her right to reimbursement for the funeral bill are barred by laches. A widow may waive her right to an award in her husband's estate and the doctrine of laches or estoppel will bar her claim. (*Howe v. Brown* (1919) 287 Ill. 532, 123 N.E. 46.) The widow's award is not barred by omission to exhibit it against the estate within two years (*Miller v. Miller* (1876), 82 Ill. 463), while a delay of seven years in applying for a widow's award ordinarily bars the right thereto. (*Gahan v. Golden* (1928), 330 Ill. 624, 162 N.E. 164.) Though no statute of limitations directly applies, the courts by analogy have adopted the period of seven years as the time within which proceedings for the enforcement of a claim by a widow for her award must be commenced after letters of administration are issued, unless the delay is satisfactorily explained. *Tarrant v. Kelly* (1898), 81 Ill. App. 118, 120-121.

■■ The delay of four years between the death of petitioner's husband and her assertion of the right to the widow's award is well within the allowable period established by the case law. The majority of cases on this point involved delays occurring after the issuance of letters of administration, while here petitioner's claim was filed promptly after the will was finally presented for probate. Any delay on her part to make such claim would be sufficiently explained by the delay in probating the will.

Petitioner's claim for funeral expenses was timely filed, under the statutory provision (Ill. Rev. Stat. 1973, ch. 3, par. 204), and is not barred by laches through any delay attributable to the petitioner.

Finally respondent contends that the trial court erred in holding that petitioner had a vested estate of homestead in the entire premises at 544 South Broadway. At best the respondent argues, the petitioner was entitled to an estate of homestead only in the apartment in which she resided.

In *Potter v. Clapp* (1903), 203 Ill. 592, 68 N.E. 81, relied on by the respondent, the surviving spouse lived in an apartment building owned by her late husband. The value of her apartment exceeded the $1,000 amount of the homestead right. The court held that she must account for the rent of the other apartment in the building, particularly in view of the fact that she had agreed with the heirs to do so and that her rights and the rights of the heirs would be subsequently adjudicated. Specifically respondent relies on the following statement by the court:

"In case a householder occupies a flat in a flat-building, or an apartment in an apartment building, as a homestead, his residence is as much disconnected from the other flats or apartments located in said building as though the portion thereof occupied by him was located upon a different lot or under a different roof; and while in a case like this it might work no great harm to hold the widow, after the death of the householder, might rightfully retain the possession

of the entire building until her homestead was assigned, if the principle were applied to a building containing, as is often the case in large cities, many flats or apartments, it would lead to absurd results." 203 Ill. 592, 605, 68 N.E. 81, 85.

In a later case however *Powell v. Powell* (1910), 247 Ill. 432, 93 N.E. 432, the question before the court was whether a surviving spouse under the homestead law had the right as against adult heirs, to the exclusive occupancy of the homestead where it was not susceptible of division and was valued at more than $1,000 (then the amount of the homestead exemption). The trial court found that none of the heirs had taken any steps to have a homestead and dower of the spouse assigned in the premises and entered a decree confirming the right of the spouse to occupy the homestead free from any interference of the heirs. Reviewing the history of the homestead law the court held:

"Applying these authorities to the facts presented by this record, appellants would clearly be entitled to extinguish the homestead of Patrick Powell by paying or tendering to him the value of his homestead estate. But appellants have neither paid nor offered to pay appellee anything for his homestead, but, refusing to do so, are insisting upon the right to occupy a substantial portion of the dwelling house forcibly and against the will of appellee.* * * If appellants desire to extinguish the homestead, the rule announced in the authorities above cited provides a lawful procedure for such purpose. Until such proceedings are had and until the payment or tender to appellee of the value of his homestead, he is entitled to the exclusive enjoyment thereof, regardless of its value." 247 Ill. 432, 439, 93 N.E. 432, 435.

Similarly here, respondent has taken no steps to have the homestead of the petitioner assigned in the premises. If in fact she does so, the amount allowable for homestead, and the division of the property would be properly raised at that time. We therefore find no error in the holding of the trial court that the petitioner had a vested estate of homestead in the entire premises at 544 South Broadway.

Therefore in view of our findings above, the order of the circuit court of Kane County is affirmed.

Affirmed.

RECHENMACHER, P. J., and GUILD, J., concur.