*In re* ESTATE OF RANDALL A. BROWN *et al.*—(LESLIE DEAN WEGER, Petitioner-Appellee, *v.* EVA PURCELL, Respondent-Appellant.)

Fifth District    No. 80-530

Opinion filed February 2, 1982.

Robert L. Douglas and Charles C. Roberts, both of Law Offices of Robert L. Douglas, Ltd., of Robinson, for appellant.

Roscoe D. Cunningham, of Roscoe D. Cunningham, Ltd., of Lawrenceville, for appellee.

JUSTICE WELCH delivered the opinion of the court:

This is an action to modify custody of three-year-old Janet Marie Weger. Her mother died within a week of Janet's birth. Leslie Weger, Janet's father, placed the child with his sister, Eva Purcell, and initiated proceedings to have Eva named guardian of Janet. Leslie remarried some time later and sought to have the guardianship terminated and custody of Janet returned to him. The trial court ordered the child returned and the guardianship terminated. Eva Purcell appeals from that order.

The issue before this court is: was it against the manifest weight of the evidence to modify custody and terminate the guardianship?

Janet Weger was born February 25, 1978, to Leslie Weger and Harriett Irene Weger. Harriett was Leslie's second wife, his first marriage having ended in divorce. Shortly after Janet was born, Harriett died of cancer of the liver. Janet was small and sickly. She weighed only five pounds and two ounces at birth and stayed in the hospital three weeks. When she was first released from the hospital Janet required feeding every two hours around the clock.

Upon her discharge from the hospital Janet went to live with her aunt, Eva Purcell, by arrangement of her father. Eva and her husband, Robert, have five children, two of whom are still minors and living at home with Janet. Janet has three older siblings: Randall A. Brown, Robert L. Weger, and Deborah L. Parker. They stayed with Leslie. On May 25, 1978, Leslie Weger filed a petition for guardianship, nominating Eva

Purcell to be guardian of the person and estate of all four children. Eva was appointed guardian on June 20, 1978. Janet continued to live with Eva, while the other three children continued to live with Leslie.

On August 25, 1978, Leslie remarried. His new wife was Nancy Ruth Weger. She had children of her own and they moved in with Leslie's three. On March 7, 1979, Leslie filed a petition to terminate the guardianship, stating that he had remarried and wished Janet to be returned to him. The petition did not allege any wrong-doing on the part of Eva pursuant to section 23—2 of the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 110½, par. 23—2), regarding removal of representatives.

A motion for summary judgment for the plaintiff was heard and denied July 13, 1979. Shortly thereafter Leslie was divorced from this third wife. He "courted" a fourth wife for about five months, and on January 7, 1980, married Nancy Weger. Nancy Weger had three children by a previous marriage. Leslie and the three siblings of Janet moved in to his new wife's home, with her three children. The eight of them visited Janet in January 1980, for a weekend at the Purcell home. They visited again around Easter of 1980.

No action was taken on the case until it was set in June by the judge for a hearing on the petition to terminate on July 24, 1980, more than a year after the denial of the motion for summary judgment. The hearing was delayed because of time conflicts of the judge. Leslie did not visit Janet at all between Easter 1980 and the hearing on the petition on September 18, 1980. Testimony was taken and memoranda of law were submitted to the court. On October 27, 1980, the court entered an order finding both Leslie Weger and Eva Purcell to be fit parents or custodians, and reciting that it was "in the best interest" of Janet to be returned to her natural father. The court ordered that Janet be returned to the custody of Leslie and that the guardianship of all four children be terminated as no longer being needed. Eva Purcell appealed the order and the court stayed the transfer pending the appeal.

The order appointing Eva Purcell guardian of the person and of the estate of Janet confirmed the actual custody which Leslie had given her. The statute describes the duties of the guardian of the person of a minor thus: "Under the direction of the court: (a) The guardian of the person shall have the custody, nurture and tuition and shall provide education of the ward * * *." (Ill. Rev. Stat. 1979, ch. 110½, par. 11—13.) The guardianship order is a custody judgment among other things.

The petition to appoint Eva could have been filed under the custody provisions of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (Ill. Rev. Stat. 1979, ch. 40, par. 601(b)(1) or (2)). The Act became effective October 1, 1977, and the petition was not filed until May 25, 1978. The provisions of IMDMA, including the criteria the court could use in settling contested custody cases, are more suited to the facts of this

case than are the provisions of the Probate Act of 1975 with its stress on the property of minors and incompetents for whom guardians have been named.

The section of the IMDMA which deals with modification of custody is section 610 (Ill. Rev. Stat. 1979, ch. 40, par. 610). The Supreme Court of Illinois has pointed out that the legislature, in section 610, has introduced a presumption in favor of the existing custodian.

> "By creating a presumption in favor of the present custodian, the legislature has sought to promote a stability and continuity in the child's custodial and environmental relationships which is not to be lightly overturned." (*In re Custody of Harne* (1979), 77 Ill. 2d 414, 421, 396 N.E.2d 499, 502.)

During the first two years of a custody placement that presumption is extremely difficult to overcome. A party must file affidavits as to serious danger to the child before the court will entertain a motion to modify at all. Ill. Rev. Stat. 1979, ch. 40, par. 610(a).

No such affidavits were filed in connection with Leslie's petition to terminate guardianship and transfer custody. However, the petition was not heard until more than two years had elapsed from the time of the guardianship order. Section 610(b) would be the applicable section under IMDMA.

> "Modification of a prior custody judgment under 610(b) requires a two-step approach. First, the petitioner must satisfy the 'jurisdictional prerequisites' of subsections (b)(1)-(3). [Citations.] Second, only after the conditions set forth in one of these three subsections have been met, consideration is to be given to the best interest of the child under 602(a)." *In re Marriage of Batchelor* (1980), 89 Ill. App. 3d 781, 784, 412 N.E.2d 49, 52, *appeal denied* (1981), 82 Ill. 2d 583.

The "jurisdictional prerequisites" referred to in *Batchelor* require that "the court shall retain the custodian appointed pursuant to the prior judgment unless: (1) the custodian agrees to the modification * * *"; obviously that is not the case here: "(2) the child has been integrated into the family of the petitioner with the consent of the custodian * * *"; again, not the case here: "or (3) the child's present environment endangers seriously his physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him." (Ill. Rev. Stat. 1979, ch. 40, par. 610(b)(1), (2), (3).) There is no evidence that Janet Weger's present environment with Eva Purcell endangers her physical, mental, moral, or emotional health. The trial court specifically found that Eva was not unfit. Leslie Weger admitted in testimony that she took good care of Janet and that Eva was the only mother Janet had ever known.

■■ As we observed before, Leslie's petition to terminate guardianship did not allege any of the causes for removal of a representative (executor, administrator, or guardian) enumerated in sections 23—2(a)(1) through (9) (Ill. Rev. Stat. 1979, ch. 110½, pars. 23—2(a)(1) through (9)). Counsel urges that section 23—2(a)(10), "other good cause," would cover the transfer of custody situation, and cites *Layton v. Miller* (1975), 25 Ill. App. 3d 834, 322 N.E.2d 484, wherein we held that neglect and deprivation of the children were sufficient to constitute "other good cause" for removal. The enumerated grounds for removal of a guardian all involve malfeasance, *e.g.*, conviction of a felony, waste or mismanagement of the estate, etc. (Ill. Rev. Stat. 1979, ch. 110½, pars. 23—2(a)(1) through (9)). Neglect and deprivation of the children also involve malfeasance. No malfeasance has been alleged or proved in this case, simply a change in circumstances of the noncustodial parent. We can find no authority for Leslie's contention that such a change constitutes "good cause shown" for removal.

Leslie urges that the doctrine of the natural parent's superior right to his child should decide the matter. The Illinois Supreme Court has acknowledged that right and the correlative responsibility of the parent to care for his child in *In re Custody of Townsend* (1981), 86 Ill. 2d 502, 427 N.E.2d 1231. However, the right does not exist in a vacuum. The court in *Townsend* cited *People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201, 210, 247 N.E.2d 417, 422, with approval for the proposition that

"* * * a finding that the parent was fit was only one factor a court was to consider and * * * the right of the parent to the custody of his or her child under the probate act 'must yield to the best interest of the child even though the parent is a fit person.' " 86 Ill. 2d 502, 511-12.

The best interest of the child, Janet Weger, appears from the manifest weight of the evidence to be for her to remain with Eva Purcell who has raised her from infancy and into whose family she has been integrated. She has a happy, well-adjusted, stable life with Eva. To change her custody to Leslie, whom she hardly knows, and put her in a position of competing with six other children for attention and affection, not to mention the instability of her lifestyle involving frequent moves and numerous marriages, would not be in Janet's best interest.

The standard of review for removal of an executor, under section 23—2 is whether the decision was against the manifest weight of the evidence. (*In re Estate of Hubbard* (1977), 54 Ill. App. 3d 238, 369 N.E.2d 292.) The standard of review in custody changes is also whether the decision was against the manifest weight of the evidence. *In re Marriage of Batchelor* (1980), 89 Ill. App. 3d 781, 783, 412 N.E.2d 49, 51, *appeal denied* (1981), 82 Ill. 2d 583.

■■ A review of the trial court's findings and the record leads us to the conclusion that the decision to modify Janet Weger's custody and remove Eva Purcell as guardian was indeed against the manifest weight of the evidence. We therefore reverse the trial court's custody transfer of Janet Marie Weger and order the guardianship of Eva Purcell reinstated as to Janet.

We note that the last names of two of the older children, who are also wards of the court under the original guardianship order, are not "Weger." Inasmuch as they are children of Harriet Irene Weger born prior to her marriage to Leslie, we remand the guardianship order for consideration by the court. If Leslie Weger is not the adoptive father of Randall A. Brown and Deborah L. Parker, the dismissal of the guardianship order may serve to place these children "in limbo." Their mother is deceased, and the person with whom they live is not their legal guardian. It would seem to be preferable to transfer guardianship of Randall and Deborah to Leslie Weger. The children have been integrated into the family of Leslie with the consent of Eva for the entire duration of her guardianship of them.

Leslie Weger is the natural father of Robert L. Weger and with regard to him we agree that continued guardianship by Eva serves no discernable purpose. We affirm the dismissal of the guardianship as to Robert L. Weger.

To recap:

Janet—custody reversed, guardianship reinstated.

Robert—guardianship dismissed.

Randall and Deborah—guardianship remanded to be transferred or dismissed as determined by the court upon verification of Leslie Weger's legal relationship to the children.

Reversed in part, affirmed in part, and remanded in part.

KASSERMAN and HARRISON, JJ., concur.